May it please the court, my name is Elliot Hector. I just want to make sure Mr. Valenzuela can hear us okay. Mr. Valenzuela, are you able to hear us okay? Yes, Your Honor. Thank you. Hopefully you can hear me okay. Yep. Okay. All right. I'm sorry. I'll start all over again. You have three minutes reserved in rebuttal. Thank you very much, Your Honor. May it please the court, Elliot Specter representing defendant appellant Leo Eulizier. I know it's very difficult to pronounce. For the purposes of this appeal, we do not dispute the issues of facts cited by the district court or the plaintiffs in their local rule 56 statement of facts. The material facts alleged to be in dispute that are most relevant to the immediate threat doctrine, which was the issue in this case, is the speed of the vehicle when it started to move and whether it was turning at the time that it started to move. These facts cannot be considered in isolation. The Supreme Court mandates that in a qualified immunity analysis, a totality of the undisputed facts be considered. In District of Columbia v. Westby, the court faulted the lower... ...that you're not allowed to shoot someone in a vehicle just because they're trying to flee. Agreed? We've said that over and over again, right? That's correct, Your Honor. In the operative ward, there is no imminent threat to the officer or others. And we have to take the version of the facts in the interlocutory appeal, plaintiff's version, and all reasonable inferences that can be drawn from those facts in the plaintiff's favor. Agreed? And we are willing to do that, and we are going to do that. So, for example, I know this is just hypothetically speaking. If the police officer was on the sidewalk and a car starts pulling away, the police officer shoots, kills the driver. You wouldn't have qualified immunity in that situation, right? It depends on the circumstances, on the totality of the circumstances. There's nobody else around. The car is starting to start up again onto a road. The police officer is standing on the sidewalk, shoots, kills the driver. There's no case that says that's okay, right? Well, actually, there is. There's a Second Circuit Court of Appeals case that we cited. Which one? The O'Brien v. Barrows case, where the officer found out through the dispatcher that this car was suspicious, had been driving erratically, went into the gas station and approached the vehicle, and the vehicle took off. The officer was not in any risk of flight. However, he was driving away in a dangerous manner on a busy road. And the Second Circuit Court of Appeals said, of course, as we all know, an officer has a responsibility to protect innocent citizens from people that are driving dangerously. And because they are driving dangerously on the roads... Your position before this court is that if your client was standing on the sidewalk, out of the way of the vehicle, and that car started pulling away, that he would be allowed to shoot and kill the driver? That is your position? I'm talking about the totality of the circumstances with regard to whether or not the officer knew that this person was fleeing from the officer, that the person had committed offenses, and that the person was driving in a manner which posed a risk to travelers of the highway. This is... Let's say we disagree with you on... Let's say I disagree with you on that one. But I've looked at that video many times, as I'm sure you have. And again, construing it most favorably to the plaintiffs, if the car started veering slowly away to get back on the roadway to flee, and your client jumps out onto the roadway in front of the vehicle at that moment and immediately starts shooting into the windshield of the car, isn't that at least... Again, there's a lot of different intricacies you can draw on. I understand your argument. It was close proximity. It was fast-moving. But why isn't that... The district court said there's a dispute as to the fact of whether a jury could find that that was reasonable under those circumstances. So why is that not sufficient to preclude qualified immunity at this stage? It can be argued again at trial with special... Obviously the court makes that decision, but you can ask for whatever special interrogatories you want that you think would help the jury. Why isn't that sufficient for a trial? There are two issues in this case. Whether or not Officer Uliazer used deadly force in self-defense, whether it was justified to use deadly force to protect travelers on the highway. I would agree with you that if he jumped in front of a moving vehicle, that he could not claim self-defense because he literally put himself in front of a moving vehicle. And there is case law on that. But there is substantial case law where officers have been in front of stationary vehicles before they started to move. And there are no cases indicating that an officer would not be entitled to qualified immunity when that individual intentionally drove toward the officer or where the officer was in a zone of danger. However, if we go to... Assume you're right. I just want to make sure. I thought that you were conceding for purposes of this appeal that we have to assume not that he was driving towards the officer, but that he was slowly turning away from the officer. Those are the facts. They may not be the right facts from a reality perspective, but those are the facts we're dealing with for our appellate review at this stage. And with regard to those facts, whether or not the officer was in the path of the vehicle, officers do not have to be directly in the path of the vehicle. And we cited a number of cases from the United States Supreme Court and the Second Circuit Court of Appeals indicating that the use of deadly force, even if the officer was not directly in the path of the vehicle, would be objectively reasonable. Now, primarily, we're talking about a Scott v. Harris evaluation. In that case, the individual was just speeding, was not posing a risk to officers at the time, but because of the manner in which he was driving... It was undisputed from the video evidence in Scott that it was, quote, a Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury. That was undisputed video evidence in Scott. In the other ones that you cite, Plumhoff, it was a 100-mile-an-hour chase that lasted over five minutes and beyond serious dispute that the plaintiff's flight posed a grave risk to public safety. The other one involved a high-speed chase with intoxication, twice threatened to shoot officers, racing towards an officer's location. So those cases are completely different from a disputed case where whether or not an officer was in danger as a car was pulling away from the area where it had stopped. It's a completely different scenario. If we look at the... Am I mischaracterizing any of those cases? You're not mischaracterizing those cases, but... So what does this case have in common with those? You're not totally on point with this case. Whether or not the officer could objectively believe that this person was fleeing, had been fleeing in a dangerous manner, and if he was allowed to continue to flee, would cause a risk of harm to travelers on the highway. And although those cases have distinguishing factors, they're not sufficient enough to deny Officer Lee Geiser qualified immunity. Then that would make deadly force acceptable in any extreme reckless driving case. So you're saying that you are not relying at all on the risk to the officer? Is that why these facts about whether he stepped in front of the car, whether the car was turning? That's all immaterial because you're relying on the potential risk to the community if the car is allowed to drive off, not on the risk to the officer? Well, since we're talking about a Fourth Amendment use of force, we're not talking about the intent of the officer. So we're relying on both the self-defense theory because Mr. Vega Cruz drove toward the officer. The officer only had a split second to make a life and death decision. And he drove toward the officer after the officer stepped in front of the car that was momentarily stopped. It was momentarily stopped. But there are no cases that indicate to an officer that if you step in front of a vehicle that is stopped at all and this person decides to intentionally drive for you, that is objectively unreasonable for the officer given the distance he may be away. The jury could find, based upon the video evidence and testimony, that the car was starting to pull away before he jumped out. Slowly started pulling away from where he was standing when he jumped out in front of the vehicle and then started backing up and shooting into the windshield. What if a jury could find that? But there is no dispute that when he stepped toward the front of the vehicle and was there for approximately two seconds, that the car at that time was stopped and then intentionally drove toward him and that he was in close proximity to the car. He was only approximately five feet away from the vehicle. And how could an officer possibly estimate how fast this vehicle is going to go in the next second or what direction it's going to turn? An objectively reasonable officer would believe that that vehicle could hit the officer. One of the challenges, I think, of this appeal is that in order to establish our jurisdiction to hear the appeal, I think you have to bend over backwards to say we're not pushing our own version of the facts. We're willing to take the facts in the most plaintiff-friendly light. But then as I hear your argument here, I'm hearing an argument about the facts from a perspective that maybe aren't the most plaintiff-friendly. Oh, the officer didn't have time to move, et cetera. So I guess I'm wondering why this isn't like the Cowan case where the court recognized that the officer would be entitled to qualified immunity if he reasonably believed that the moment he fired that the person posed a significant threat of death or serious physical harm to him or to others, but he wouldn't if he didn't, and that ultimately is a jury question. It's easier to distinguish the Cowan case than the other cases from the United States Supreme Court, which have been distinguished by the court. And in the Cowan case, there was a totally innocent person driving slowly toward the officer who fired the first shot when that person was 44 feet away, and the second fatal shot as he was standing 11 feet away from the side of the vehicle where neither he nor anybody else in the area, because there was nobody else in the area, were in danger. To the cases that we've cited, and if you carefully read the cases, particularly the cases from the Second Circuit Court of Appeals that are cited, as well as the cases from the other circuits, the consensus of the circuits, you will see that it gives officers far more latitude. And we are not arguing our side of the case. We are willing to accept the plaintiff's Rule 56 statement of facts, and he admits that Vega Cruz was trying to flee the entire time, which is consistent with all of the cases that we've cited. So shouldn't we view it from that perspective? Shouldn't the question be whether the officer was entitled to use deadly force to prevent him from fleeing because that flight might have posed a risk to third parties? Isn't that really the question that's the crux of the case at this juncture, rather than the self-defense piece, which really turns on facts? If the court decides that even if an officer made a reasonable mistake under Saucier v. Katz, that he was at risk because he was in such close proximity within that one second that the vehicle came toward him, that is a reason to find that it was objectively reasonable to use deadly force in self-defense. If he believed that this vehicle had been driving dangerously prior and was still trying to get away from him, and there were people on the Silestine Highway who could be subjected to harm, then he had the second reason that would justify the deadly use of force. In addition, in the Rule 56 statement, multiple times the plaintiff claims, five times, that he was driving at a high rate of speed, that he continued to drive at a high rate of speed. Multiple times he says the road was wet, it was raining, it was pouring. He admits, and the video shows, that there was moderate traffic. He was clearly attempting to flee under dangerous situations, and this would allow a reasonable person to believe that he had continued. I'm a little surprised to hear. I thought, based upon your briefs, you were arguing that your client is entitled to qualified immunity because he was in imminent danger, perceived he was in imminent danger. I'm really surprised to hear that you're now arguing, it seems more generally, as Judge Robinson just indicated, that he had to protect some unknown members of the public at the point he was shot through the windshield. Is that your position now? We argue throughout this case both theories under the Fourth Amendment. Let's give your opposing counsel a chance. You have three minutes on rebuttal. Mr. Valenzuela, you can proceed when you're ready. Good morning, Your Honors. Eric Valenzuela on behalf of the appellee, and thank you for hearing this matter. My first argument I would make, which was touched on a little bit, would be a lack of a jurisdiction argument. This was clearly denied on the grounds that there's disputed issues in material fact and, therefore, is not immediately appealable. I understand that the court can undertake an interlocutory appeal if they assume all of the plaintiff's facts to be true. I'll touch on what plaintiff's facts are to be true in a second, but we believe that the district court got it right when it found there's disputed issues of fact that must be resolved by a jury, including there's credibility issues here that need to also be assessed by a jury. But we believe, just like in the Cohen case, that the case should be remanded. A jury should decide whether the use of force was excessive or not. Then a jury should also decide whether the decedent drove his car towards or away from the officer, whether a utilizer was in the zone of danger, and if whether he could safely have gotten out of the way, and that those are interrogatories that a jury must answer. And then after the jury has answered those interrogatories, then the court should undertake the analysis as to whether the officer is entitled to qualified immunity or not. Now, there's two orders in general statutes that I would like to discuss that are very important in this case that deal with vehicle pursuits. They're the Weatherfield Police Department General Order 5-413, and they're the Connecticut General Statute Section 14-283. Those orders and statutes specifically say when you're dealing with vehicle pursuits involving misdemeanor offenders, you don't do roadblocks, you don't do forcible stops, and you never use deadly force against these individuals. So it's very difficult for the officer to say, I didn't know my use of lethal force would have been unlawful here, when your specific training and policies tell you you do not use deadly force in these situations. Does your case- I'm sorry, just so I can understand the role of those laws. Is your claim that deadly force was prohibited on the basis of those statutes regardless of any constitutional prohibitions on the use of deadly force in this circumstance, or is your position that those statutes shed some light on the context in which deadly force is allowed by virtue of the Constitution? More of the shed the light argument, and I believe these statutes and orders are relevant to both prongs of qualified immunity. It's relevant to whether the use of force was excessive or not, and two, it's relevant to the notice that the officer would have been put on. So it's just a factor amongst the many to consider. If this officer had been in a jurisdiction that didn't have those rules, would our analysis of whether the force was excessive, or whether there was clearly established law that told the officer that it was excessive, would it be a different analysis depending on whether those policies and laws existed? I guess that's what I'm trying to understand. It wouldn't necessarily be a different analysis, Your Honor, because I think even Cohen and a handful of 9th Circuit cases that we have cited stand for the proposition that if you do find yourself in the pathway of the vehicle and you can safely move away from it, you should do so. So that case, regardless— Even under Connecticut policy, like an officer is allowed to use deadly force if there's an imminent threat to the officer and or to an innocent pedestrian or bystander, right? If those policies you just cited wouldn't prevent that, they seem to be in sync with the clearly established constitutional law, right? Correct. They're a factor to consider in both in determining the excessiveness of the use of force and whether they were sufficiently on notice. Can I just ask you then? Let me just try to focus you on I think are, if taking your client's version of the facts, what I think would be the two arguments of why the officer is still entitled to qualified immunity. As you heard here, one of the arguments is even if he was standing on the sidewalk, even if the car was pulling away from him, he had the right in this situation to use deadly force based upon the threat to other third parties. What's your response to that? There's nothing in the decedent's conduct that would have constituted using deadly force against him under a flame felon theory. If you look at the videos again, and I know you've all looked at them many times as have the attorneys, I was looking at the videos again yesterday in preparation for my argument. When the officer turns on his sirens, you can see the blue and light flashes from the yellow, I mean from the siren. When that occurs, the decedent is in the number two lane or the far right lane. Shortly after the officer turns on his sirens, he pulled over, stops, the officer gets out, and he begins to travel forward again on the highway. The decedent doesn't even try to change a lane before Officer Ulizer attempts to do a roadblock by pulling his car directly in front of him, causing the decedent to lose control, spin out onto the other side of the highway. After that, he's intentionally rammed by Officer Ulizer's vehicle. The decedent then puts the vehicle in reverse when he's intentionally rammed by Officer Salvatore. Then he begins to go slightly forward and to the right back onto the highway. The decedent never tried to intentionally ram any of the pedestrians or officers' vehicles, never tried to hit anybody, never tried to hit any vehicles. He was trying to flee, we're not going to dispute that part, but his actions in trying to flee do not rise to the level of trying to kill somebody to prevent them from escaping, and we think case law clearly established that, even going back to Garner. The second theory, I think, again, under your version that he would argue qualified immunity as a matter of law, is that it was such a rapidly evolving situation that from four feet away, he had seconds to make this decision, and that as a matter of law, then he's protecting him if it turns out that he misperceived that there was a threat to him. What's your response to that? That one, that it would have been an unreasonable mistake, and also the case law would have put him on notice that if you can safely step away from a vehicle, you do so instead of firing into it, and that's both off of, you know, I think Cohen, he brings us the case law that we would establish under the qualified immunity, you know, sufficient notice prong, and in there, one of the shootings is alleged, one of the shots was alleged to have been fired at approximately 11 feet away. There's evidence that the vehicle was traveling very slowly. One of the witnesses put the officer to the left and in front of the vehicle, and that the vehicle only moved a few feet. Interestingly, in Cohen, the case was the vehicle was traveling approximately 20 to 30 miles an hour. For here, we think it's factually similar enough, even though you have the distance about half of that, the vehicle's only traveling maybe three miles an hour and has only moved a few feet, and the officer could safely move out of the way. That's why we think just like in Cohen, one, Cohen would have put the officer on sufficient notice that his use of force would have been unlawful, especially when coupled with the officer training and their own policies, but two, just as in Cohen, this is an issue that must be resolved by the jury. One, resolving disputed issues of fact, making a determination whether the use of force was excessive, answering the interrogatories that were kind of discussed in Cohen, and then having the court make the analysis as to whether the officer is entitled to qualified immunity after all that has first occurred. So whether it's Cohen, whether it's other Ninth Circuit precedent, we believe that would have put the officer on sufficient notice that he could not use deadly force under this situation because it wasn't an imminent threat of death or serious bodily injury, and two, he couldn't be sued under a fleet felon theory. What about Brasso? How do we distinguish? I mean there's a case where the U.S. Supreme Court seems to endorse the notion of qualified immunity in the context of shooting from behind, right, in the context of somebody who's not a threat to the officer, who's not immediately, there's not somebody in the driver's path, but the court seems to suggest that preventing the escape and the potential threat that that would create downstream would be at least not precluded by clearly established law at that time. What's the answer to that? The distinction is that in the Brasso case, the individual who was shot's actions were far more egregious than we had here, and we kind of discussed some of the distinctions in the briefing, but it's our position that the actions of the decedent in this case did not rise to the level of the actions that the court found in the Brasso case, and that would be the distinction that in the Brasso case they found he had acted recklessly enough to basically shoot him under a fleet felon theory to prevent his escape. We don't believe that the same recklessness, the same level of immediate danger was raised in the decedent's actions in this vehicle of pursuit. What I'm trying to figure out is what about the facts in Brasso, because in Brasso there wasn't like a high-speed chase leading up to it that would have been a piece of the evidentiary basket there that the officer was, so it was really the moment that it was happening and the prospective concern that the officer had to process. I referenced the Brasso case in our briefing, and my recollection was more part of the actions, a big part of the decedent's actions prior to the shooting played a role in the court's decision in finding that the officer was entitled to QI to shoot under a fleet felon theory, so we believe that in that case they did kind of rely a lot, not only that the threat that he posed had he been able to escape, but based on a lot of his actions leading up before the shooting, and we believe here in this case we don't have those, and we reference in the brief some of the specific, even though briefly, distinctions from the Brasso case, from this case. All right. Thank you, Mr. Valenzuela. We'll hear from Mr. Spector. Three minutes and rebuttal. Thank you, Your Honor. With regard to the Brousseau case, and thank you very much is the first thing I was going to start off with on rebuttal, that individual was barely moving when the officer was behind the individual and shot the individual in the back, and there was no dangerous driving. That is clearly a case that still stands, and there's been no clearly established law reversing the opportunity of an officer to be entitled to qualified immunity under those circumstances. Far different than the dangerous circumstances that we had in this case, including the proximity of the officer and the time that he had to make his decision. The other thing that I'd like to talk about is this claim that because the vehicle was moving within that one second and may have been turning within that one second, is absent the officer's ability to make an evaluation as to the speed and direction of the vehicle so we could arrive at an issue where the plaintiff can reasonably claim that he could have easily moved out of the way. But that's not the question for qualified immunity. For qualified immunity, it's could an objectively reasonable officer have believed that he was being subjected to the risk of serious harm. And I know this court and the United States Supreme Court has taken into consideration the reality of officers being involved in these situations in addition to case law. And 11 months before this incident occurred, Amy Caprio was standing in the exact position at the front headlight of a suspect vehicle with a teenager driving it. It started to come toward her. She shot, she missed, she was killed. Officer Garten in Hartford recently was shot and killed when an individual who was stopped by a police officer waited for the police officer to get out of his cruiser so he could speed off. And he was not even involved in this case. And the reality is something that police officers know. And it affects their judgments. And if we're saying that Officer Eliezer is not entitled to qualified immunity, we are telling our police officers that you have to make... We wouldn't be saying he's not entitled to qualified immunity. We take into consideration under our law the split-second nature in dangerous situations like that. We're saying that the district court here has determined there are issues of fact precluding whether or not it was reasonable. And you could put special interrogatories to the jury where you say was at the time the officer fired, was the car pulling away from him or not? And with those facts, the court can still find your client is entitled to qualified immunity precisely for all the reasons you're indicating. That's what we're deciding today if we decide against you. And we are arguing that officers should be entitled to rely on the law that's given to them. You're arguing if it's a split-second decision, it's automatically entitled to qualified immunity. And I would suggest to you that's not the law. Just because it was a quick decision doesn't mean that you're entitled to qualified immunity. The quick nature of the decision is one factor, but there are other factors that have to be considered as you noted, you know, when you started your argument in the totality of the circumstances, right? But the disputed issues of fact in this case with regard to the speed and direction of travel, we are willing to accept them for the one second for the determination as to whether or not there's qualified immunity in this particular case. And there were, you know, a couple of other things that she mentioned with regard to whether or not he stepped in front of the vehicle, intentionally did it or whether it was accidentally. And we're saying it's of no import because he was stepping in front of a stationary vehicle and whether Officer Salvatore intentionally struck the vehicle. So what we're left with for the purposes of qualified immunity is whether or not, you know, Officer Leiser would have believed that he was at risk. And that's the operative word. And in all of the cases that we've cited, they were at risk. The cases cited by the plaintiff, like the Collin versus Breen case and the several of 9th Circuit case, there was virtually no risk, no reason to believe at all that the officers were being subjected to the risk of serious injury or death. With regard to the policies, I think the law is clear that they do not define what is reasonable under the Constitution. And with regard to his claim with regard to the roadblock, not that we think that was not the precipitating event that led to the shooting incident, but with regard to that, if you do a freeze frame at the moment that Vega Cruz turned in front of the cruiser, you can see that there is virtually no part of the cruiser in the northbound right-hand lane. Is it a meaningful distinction of Rousseau that the individual who was shot was wanted on a felony, no bail warrant, whereas I think we have to assume for purposes of this that there was essentially a traffic stop? I don't think that's significant because we don't know what kind of a warrant it was for, whether it was a dangerous crime, whether it was a dangerous felony. We have no idea what it was or whether or not the officer took that into consideration or would have taken that into consideration when he was driving away. He could not have shot that individual under the fleeing felon rule, so he did not use deadly force for that purpose. He used deadly force because there were others and a couple people in a car four feet to the side and a couple other people 20 to 30 feet aside, a far less dangerous situation than the travels of the Silas Dean faced. Thank you, Mr. Spector. Thank you, Mr. Valenzuela. We'll reserve the decision. Have a good day.